PEOPLE v. JACKSON.

(Supreme Court, Appellate Division, First Department. May 22, 1908.)

HOMICIDE—"MANSLAUGHTER"—SUFFICIENCY OF EVIDENCE.

    Evidence in a prosecution of a signalman for manslaughter, under Pen. Code, §§ 193, 195, making the killing of a person by the negligent act of another "manslaughter," for the killing of a passenger on a rail- road train which resulted from a wrong use of signals by accused, con- sidered, and *held* insufficient to warrant a conviction.

    [Ed. Note.—For other definitions, see Words and Phrases, vol. 5, pp. 4338, 4342; vol. 8, p. 7715.]

    Scott, J., dissenting.

Appeal from Court of General Sessions, New York County.

Cornelius J. Jackson was convicted of manslaughter in the second degree, and appeals. Reversed.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGH-TON, and SCOTT, JJ.

Levi W. Naylor, for appellant.

William Travers Jerome, Dist. Atty. (Robert C. Taylor, of counsel), for respondent.

CLARKE, J. The defendant was a towerman on the Ninth Avenue Elevated Railroad in the city of New York, in charge of the switches at Fifty-Third street and Ninth avenue, where the Sixth Avenue trains leave the Ninth Avenue tracks and, running through Fifty-Third street, turn into Sixth avenue to continue downtown. The second count of the indictment, which count alone was submitted to the jury, after setting forth the general duties of the defendant as a switchman in the employ of the Interborough Rapid Transit Company and that he was in charge of the switch at Ninth avenue and Fifty-Third street, alleged: That it was the duty of said Jackson to attend to the proper exhibition and display of the signals, and duly and properly to work, exhibit, and display the same for the guidance of the conduct of the motormen; that the line of the said railroad was equipped and provided with a certain signal, located and situated near the switch near Fifty-Third street, so constructed that it could be set so as to display either a red disc or a green disc, and it was the duty of Jackson in his said employment, whenever a train so marked as to show that it was intended that the said train should continue in a southerly direction down Ninth avenue beyond Fifty-Third street and should not turn in an easterly direction along Fifty-Third street, should approach the said signal and switch from a northerly direction, to cause the said signal to be set so as to display to the motorman of such train a red disc, and to cause the said signal so to remain until the said switch should be so set as to allow the said train to proceed in a southerly direction down Ninth avenue beyond the said Fifty-Third street, and to refrain from setting the said signal so as to show to the motorman of such train a green disc until the switch there should be so set as to allow the passage of such train in such southerly direction down Ninth avenue and beyond Fifty-Third street; and on the day aforesaid a certain train so marked as to show that it was intended that the same should proceed in a southerly direction beyond Fifty-Third street down Ninth avenue there, and should not be turned at the said Fifty-Third street from a southerly direction to an easterly direction, was approaching the said signal and switch from a northerly direction, and at the said time the said switch was then and there so set and placed that it was not possible for the said train to proceed beyond Fifty-Third street along the said track in a southerly direction, and so that the said train, if it proceeded, would be turned and could proceed only in an easterly direction and along Fifty-Third street; and it was the duty of Jackson to set the said signal so as to display to the motorman of the said train a red disc, and to leave the said signal so set, and to refrain from

setting the said signal so as-to show to the said motorman a green disc until the said switch should have been so set that the said train could proceed in a southerly direction beyond Fifty-Third street along the said Ninth avenue there. Nevertheless Jackson, then and there well knowing the premises and his duty in that regard as aforesaid, and being wholly unmindful of and disregarding the same, feloniously, willfully, and carelessly, with gross and culpable negligence, did then and there, the said switch being then and there so set as last aforesaid, wholly omit and neglect to cause the said signal to be so set as to display to the motorman in charge of the said train a red disc, and did then and there feloniously, willfully, and carelessly, with gross and culpable negligence, cause the said signal to be so set as then and there to show to the said motorman a green disc, by reason of which said culpable negligence of him, the said Jackson, the motorman of the said train was then and there induced to believe, and then and there did believe, that the said switch was then and there so set as to allow the said train to proceed in a southerly direction beyond Fifty-Third street along Ninth avenue there, in which direction the said motorman then and there desired that the said train should then and there proceed, whereupon the said motorman, acting upon such belief, then and there caused the said train so under his control as aforesaid to proceed along and beyond the said signal with great speed, by reason whereof the said train then and there proceeded at such great speed upon and onto the track of the said road there leading in an easterly direction along the said Fifty-Third street there, by reason whereof and of such culpable negligence of him, the said Jackson, one of the cars of which the said train was then and there composed was then and there with great force and violence thrown from the said track and elevated railroad down to and upon the ground, by means of which one Solomon Neaugass, a passenger in said car, was killed.

It is to be borne in mind that under this indictment the defendant is charged with a particular act of culpable negligence, as a consequence of which a passenger lost his life. He is not charged generally with a failure of duty or culpable neglect. The people have laid their hand upon one specific act, namely, that on the approach of a Ninth Avenue train the defendant neglected to display to the motorman in charge of said train a red disc, and did cause the said signal to be so set as to show to the said motorman a green disc, by reason of which the motorman was then and there induced to believe, and then and there did believe, that the said switch was so set as to allow the said train to proceed in a southerly direction, whereupon the motorman, acting upon such belief, caused the said train under his control to proceed along and beyond the said signal with great speed onto the Fifty-Third street track, by reason whereof the car was caused to leave the track and fall into the street. The conviction, therefore, if it is to be sustained, must depend upon the question whether the display of the green signal and the failure to display the red signal was an act of culpable negligence which caused the accident.

The case is singularly free from disputes as to the facts. The defendant was an experienced switchman, bearing an excellent reputation upon the road. He was familiar with the situation, and conversant

with the rules and regulations governing the control of trains and the signals and switches at this point. The next station above Fifty-Third street is at Fifty-Ninth street. From this point all the signals at the locus in quo were visible. The Ninth Avenue line proceeds straight downtown. Three hundred and ninety feet north of the Fifty-Third street switch is a cross-over from the middle or express track to the southerly or downtown track. At the cross-over is a switch bearing a target or disc which, when the track is clear, shows yellow. A yellow disc or flag is a cautionary signal, and is an order to an approaching motorman to slow down and get his train under control. The signal at this point, while not operated in connection with the switch at Fifty-Third street, yet acts as a cautionary signal to downtown trains approaching Fifty-Third street, so that, if the motorman obeys the order given by this yellow signal, he gets his train under control and is approaching Fifty-Third street slowly. From 35 to 36 feet north of the switch at Fifty-Third street is a signal called the "home signal." This is operated from the tower house, and it shows two colors, red and green. Green is the signal that the road is clear; red is the signal to stop. The signal at the switch is called the "pot signal," and is lower than either of the two hereinbefore referred to. This signal shows two colors, green and yellow. When the track is set straight for Ninth avenue, this pot signal shows green. When the switch is turned for the Fifty-Third street curve, around which the Sixth Avenue trains go, this signal shows yellow.

The operation of these signals is as follows: The first or cautionary signal always shows yellow when the cross-over is not open. The line in its normal state should be set straight for Ninth avenue, with the cautionary at yellow, the home signal at red, and the pot signal at green. When a train bearing the discs indicating that it is a Ninth Avenue train approaches, the towerman changes the home signal from red to green. The motorman then has, first, the yellow cautionary, then the home green, then the pot green. That says to him: The track is set up for Ninth avenue, and you may go ahead. The track is so arranged that the wheels of the train engage a bar which locks the signals, so that, after the train has entered upon the rails in the immediate vicinity of this switch, none of them can be changed until the train has passed out of the section. After the Ninth Avenue train has gone on its way, it is the duty of the towerman to change the home signal back to red. Therefore the normal condition, when no train is approaching, of the track is, set for Ninth avenue, the yellow cautionary, the red home, and the green pot. If with the track in this condition a train marked for Sixth avenue approaches, the towerman throws the pot signal to yellow, and then the home signal to green. This means that the track for the Sixth avenue trains is open into Fifty-Third street; but to a Ninth Avenue train green at the home signal and yellow at the pot signal is just as much an order to him to stop as it would be if the red signal was displayed. In other words, the Ninth Avenue motorman has two stop signals—one red, and the other the combination of the green at the home and yellow at the pot signals. He can only proceed down Ninth avenue when he has the com-

bination yellow at the cautionary, green at the home, and green at the pot.

On the morning of the accident, in the neighborhood of 7 o'clock, the towerman was at his post and had been suffering for an hour or so with a bowel trouble. As a Sixth Avenue train approached he was taken with cramps. He threw the switch for the Fifty-Third street track, thereby displaying the yellow disc, and then changed his home signal from red to green. As the Sixth Avenue train approached with the signals so properly displayed for it to continue on its way, and after they had become locked by the wheels of the first car engaging the interlocking bar, so that they could not be turned, the defendant ran some 12 feet to the closet. Hearing a train approaching, he hastily ran out, still in disorder; but it was too late to do anything. The signals and switch were locked by the wheels of the approaching train. This was a Ninth Avenue train. The motorman had disregarded the cautionary signal 390 feet north of the switch, and was running at the speed of 25 miles an hour. The track remained as it had been set for the Sixth Avenue train, with the signals properly displayed for its then condition, namely, green at the home and yellow at the pot signal. If it had been a Sixth Avenue train that was approaching, the signals would have been properly displayed for such train, the track was properly set, and the train would have gone around in safety, if the motorman had taken the curve slowly as required by the rules. The signals showed the exact condition of the track; that is, set for Fifty-Third street, and they gave an order to the Ninth Avenue train that the track was not set for it down Ninth avenue, and that it was the duty of the motorman of that train upon those signals to stop precisely as if a red signal had been displayed. In utter disregard of those signals, and of the rules of the company, which had required him to slow up and get his train under control at the cautionary signal, as well as the rules to stop when he saw these two signals displayed, the motorman continued at a speed of 25 miles an hour around the curve, and so, of course, cars left the track and fell to the street, with a deplorable loss of life.

It is obvious, upon the facts here presented, that the gross and culpable negligence of the motorman in proceeding at the high rate of speed at which he was running, in disregard of the rules of the company and in defiance of the orders given to him by the signals displayed to stop, was the proximate cause of the death of the passenger. The towerman had set his signals, which told the exact condition of the track. The track was in perfect condition in accordance with those signals. There was no failure of machinery. There was no misplaced switch. There were no erroneous or lying signals. The story the signals told was the truth, and the order that they gave to the Ninth Avenue motorman was to stop; and the order to the Ninth Avenue motorman to stop would have been no more imperative if, with the track set for Fifty-Third street, as it was, the home signal had displayed the red disc, instead of the green. But, it may be said, if the towerman had set his track back to Ninth avenue and the home signal had been displayed red, that if the Ninth Avenue motorman had disregarded that signal and had run past it at the rate of 25 miles an hour

no accident would have occurred, because he would have proceeded straight down Ninth avenue. The answer is that the defendant has not been indicted for a general failure of duty, or for a failure to set back the Ninth Avenue track. He is indicted because when the Ninth Avenue train approached, the switch was then and there so placed that it was not possible for the said train to proceed beyond Fifty-Third street along the said track in a southerly direction, and so that the said train, if it proceeded there, would be turned and could proceed only in an easterly direction and around Fifty-Third street there, and, the said switch being then and there so set, the defendant did' wholly omit and neglect to cause the said signal to be so set as to display to the motorman in charge of the said train a red disc, and did, with gross and culpable negligence, cause the said signal to be so set as to then and there show to the said motorman a green disc, by reason of which said culpable negligence the motorman of the said train was then and there induced to believe, and then and there did believe, that the said switch was then and there so set as to allow the said train to proceed beyond Fifty-Third street along Ninth avenue, upon which belief the motorman acted.

With the switch set for Fifty-Third street, as charged in the indictment, the green disc coupled with the yellow at the pot signal did not indicate to the motorman that he could proceed down Ninth avenue, but was an absolute statement that the track was then set for Fifty-Third street, as it was, and that it was his duty to stop; and if the red disc had been displayed, the failure of which is charged in this indictment, it would have been no more an order to the motorman to stop than the combination of green and yellow which was there, and under the circumstances here disclosed, under this indictment, I cannot see that the display of the red disc would have prevented the accident. Nor can we assume that the motorman would have obeyed one imperative signal when he had disobeyed another equally as imperative, and therefore I do not see how it follows that the failure to display the red disc, with the tracks properly set as the signals called for, can be held to have been a proximate or a concurring cause of the accident.

Section 193 of the Penal Code provides that:

"Such homicide is manslaughter in the second degree, when committed without a design to effect death: * * * (3) By any act, procurement or culpable negligence of any person which, according to the provisions of this chapter, does not constitute the crime of murder in the first or second degree, nor manslaughter in the first degree."

Section 195 provides that:

"A person who, by any act of negligence or misconduct in a business or employment in which he is engaged, or in the use or management of any machinery, animals, or property of any kind, intrusted to his care, or under his control, or by any unlawful, negligent or reckless act, not specified by or coming within the foregoing provisions of this chapter, or the provisions of some other statute, occasions the death of a human being, is guilty of manslaughter in the second degree."

I cannot reconcile myself to the proposition that a switchman, who has set his signals to indicate the precise condition of his switch, is guilty of manslaughter because a motorman, in gross disregard of his

duty, has failed to obey the order given by the signals which show the actual condition of affairs. An essential charge in the indictment is that by the display of the green disc at the home signal the motorman was induced to believe, and acted upon such belief, that the way was clear down Ninth avenue. No evidence was introduced to sustain that allegation, and the facts proved show that the green disc in combination with the yellow disc at the pot signal was an indication directly to the contrary.

My conclusion is, therefore, that the evidence did not sustain the indictment and that the judgment should be reversed.

Judgment reversed, and new trial ordered.

INGRAHAM, LAUGHLIN, and HOUGHTON, JJ., concur. SCOTT, J., dissents.